**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| DIRECT LIST LLC, a North Carolina Limited Liability Company; and ERAN SALU, an individual,<br><br>　　　　　　　　　　　　Plaintiff,<br>　v.<br>VISTAGE INTERNATIONAL, INC., a Delaware Corporation; PHIL KESSLER; LAUREN KESSLER; DIANA OWENS; EDETTE HERRON; and DOES 1 through 10, inclusive,<br><br>　　　　　　　　　　　　Defendant. | CASE NO. 15cv2025-WQH-JLB<br><br>ORDER |

HAYES, Judge:

　　The matter before the Court is the Motion for Summary Judgment, or in the Alternative Dismissal, of Plaintiffs' Fraud and Cal. Bus. & Prof. Code § 17200 Claims pursuant to Fed. R. Civ. P. 12(b)(1) and Fed. R. Civ. P. 56 filed by Defendant Vistage International, Inc ("Vistage"). (ECF No. 47).

**I. Background**

　　On September 11, 2015, Plaintiffs Direct List LLC ("Direct List") and Eran Salu ("Salu") commenced this action by filing the Complaint alleging four causes of action: (1) fraud, (2) breach of fiduciary duty, (3) misappropriation of trade secrets in violation of Cal. Civil Code § 3426 *et seq*., and (4) unfair business practices in violation of Cal. Bus. & Prof. Code § 17200 *et seq*., California's unfair competition law ("UCL"). (ECF

1  No. 1 at 14-17). The fraud claim was brought only by Salu. *Id.* at 14. The UCL claim
2  was brought by Salu and Direct List. *Id.* at 17. On February 8, 2016, the Court issued
3  an order granting Vistage's Motion to Dismiss Plaintiffs' claim for breach of fiduciary
4  duty and denying Vistage's Motion to Dismiss Plaintiffs' claim for fraud. (ECF No. 20
5  at 13).

6  On July 22, 2016, Vistage filed the Motion for Summary Judgment, or in the
7  Alternative Dismissal, of Plaintiffs' Fraud and Cal. Bus. & Prof. Code § 17200 Claims
8  pursuant to Fed. R. Civ. P. 12(b)(1) and Fed. R. Civ. P. 56. (ECF No. 47). Vistage
9  contends that the Court lacks subject matter jurisdiction over the fraud claim because
10 Salu does not have standing under Article III of the U.S. Constitution, and that the
11 Court lacks subject matter jurisdiction over the UCL claim because neither Salu nor
12 Direct List have Article III standing. In the alternative, Vistage contends that summary
13 judgment is warranted on the fraud claim because Salu has suffered no damages.
14 Vistage contends that summary judgment is warranted on the UCL claim because Salu
15 and Direct List have not suffered a cognizable injury under the UCL, and the remedies
16 available under the UCL are inapplicable to this matter.

17 On August 15, 2016, Plaintiffs filed a response in opposition. (ECF No. 53). On
18 August 22, 2016, Vistage filed a reply. (ECF No. 54).

19 **II. Article III Standing**

20     **A. Allegations of the Complaint**

21 Vistage is an organization that offers chief executive officers a "confidential,
22 trusted forum in which CEOs may safely discuss their most sensitive and private
23 business affairs with fellow CEOs, led and overseen by the CEO Group Chair." (ECF
24 No. 1 at ¶ 2). "Plaintiff Direct List LLC is a direct marketing company with over 30
25 years of experience in lead generation, email marketing, direct mail, and data
26 processing[.]" *Id.* at ¶ 23. Plaintiff Eran Salu ("Salu") created Direct List LLC, and the
27 "sole owner/member" of Direct List "is JAL Equity Corporation, which is a Nevada
28 corporation[.]" *Id.* at ¶¶ 7, 12.

Plaintiffs allege that Salu joined Vistage in or around 2007, and after moving to San Diego, California, Salu "joined a [Vistage] group chaired by Defendant Phil Kessler . . ." *Id.* at ¶¶ 30, 34. Plaintiffs allege that "Salu shared highly confidential and sensitive business information and trade secrets about Direct List with Mr. Kessler[,]" and that in 2012 "Direct List began to provide direct marketing to Vistage." *Id.* at ¶¶ 36, 43. Plaintiffs allege that "[t]he work for Vistage was performed by Direct List's Direct Marketing Group team, which" included Defendant Edette Herron ("Herron"). *Id.* at ¶ 46.

Plaintiffs allege that "[i]n or around February 2015, Mr. Salu informed Mr. Kessler that he would be moving to Florida in 3 months, and that he could therefore no longer participate in Mr. Kessler's Vistage Group." *Id.* at ¶ 52. Plaintiffs allege that in May 2015, after Salu had left California, all of the Direct List employees left the company. *Id.* at ¶¶ 54-57. Plaintiffs allege that Salu then learned that Herron, a former Direct List employee, worked at AVS Leads and that Kessler's daughter was the general manager. *Id.* at ¶¶ 58-59. Plaintiffs allege that Kessler subsequently confirmed that his daughter worked for AVS Leads and "conceded that he had introduced his daughter and [] Herron to facilitate the formation of a business intended to directly compete with Direct List." *Id.* at ¶ 61. Plaintiffs allege that "AVS Leads currently employees [sic] all five of the ex-employees of Direct List's Direct Marketing Group." *Id.* at ¶ 71.

Plaintiffs allege that "[t]he formation and success of AVS Leads was made possible solely through the misappropriation of Direct List's confidential business materials, which was orchestrated by Mr. Kessler in reliance on confidential information he had learned from Mr. Salu in his role as Vistage Chair, acting as agent for Vistage International." *Id.* at ¶ 75. Plaintiffs allege that "Kessler was acting as the agent of Vistage International" when Salu shared Direct List's confidential information with his Vistage group, and Vistage "authorized" and "ratified" Kessler's actions. *Id.* at ¶ 35. Plaintiffs allege that "[w]hen Mr. Salu became aware of this theft of his

confidential information, he promptly contacted Vistage . . . only to be told that it was not their problem or concern." *Id.* at ¶ 9. Plaintiffs allege that as the result of this "conduct . . . Direct Leads has been deprived of the vast majority of its clients, and over half of its profits." *Id.* at ¶ 76. Plaintiffs allege that "Salu has suffered damages in the form of substantial loss of business and profits to his company, in the estimated amount of $3 million." *Id.* at ¶ 85.

### B. Contentions of the Parties

Vistage contends that "JAL Equity is the sole owner of Direct List[,] Salu has never been an employee of Direct List[, and h]e has never received personal income from Direct List." (ECF No. 47-1 at 13) (citing ECF No. 47-2 at 2-3). Vistage contends that "Salu cannot claim he has standing by stepping into the shoes of JAL Equity." (ECF No. 47-1 at 20). Vistage contends that while the Complaint alleges $3 million in damages, "[t]hese are Direct List's damages, not Salu's damages (and Direct List is not [Salu's] company)." *Id.* at 11.

Vistage contends that the Court lacks subject matter jurisdiction over the fraud claim brought by Salu because Salu has suffered no injury. *Id.* at 21. Vistage contends that "Salu does not allege that he personally suffered any damages in connection with his fraud claim[,]" and that "Salu has suffered no injury in fact." *Id.* at 18. Vistage contends that Salu also does not have standing to bring the UCL claim. *Id.* at 25. Vistage contends that the "Plaintiffs allege that the Non-Vistage Defendants took the Confidential Information, misused it, formed a competitor called AVS, and operate that competitor to date[,]" but Vistage did not profit from this conduct or cause any harm to Plaintiffs. *Id.* at 28.

Plaintiffs contend that Salu has standing to bring the fraud claim because he "is properly asserting an individual claim" for fraud. (ECF No. 53 at 14). Plaintiffs contend that "Vistage's representations were made to Salu personally, and not to Direct List, and Salu's reliance was likewise personal." *Id.* at 15. Plaintiffs contend that "Salu has consistently maintained that he personally suffered damages[,]" and he testified

"that at the time of filing this suit, [Salu] believed his personal damages resulting from the loss of income from Direct List was $3 million." *Id.* Plaintiffs contend that "Vistage's premise that 'Salu has personally suffered no damages' is false" and "[t]he fact that Salu has suffered damages undermines all of Vistage's various standing arguments and claims that he cannot establish the damages element for fraud." *Id.* at 16.

**C. Applicable Law**

A litigant must have standing "to challenge the action sought to be adjudicated in [any] lawsuit" in federal court, and this requirement is imposed by Article III of the U.S. Constitution. *Valley Forge Christian College v. Americans United*, 454 U.S. 464, 471 (1982). "Standing is an essential, core component of the case or controversy requirement" of Article III. *San Diego Cty. Gun Rights Comm. v. Reno*, 98 F.3d 1121, 1126 (9th Cir. 1996). The Supreme Court has stated that

> It is by now well settled that 'the irreducible constitutional minimum of standing contains three elements. First, the plaintiff must have suffered an 'injury in fact' – an invasion of a legally protected interest that is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical. Second, there must be a causal connection between the injury and the conduct complained of . . . Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.'

*United States v. Hays*, 515 U.S. 737, 742-73 (1995) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-561 (1992)).

In *Lujan*, the Supreme Court stated that "it must be 'likely,' as opposed to merely 'speculative,' that the injury will be redressed by a favorable decision." 504 U.S. at 561 (citation omitted). In a challenge to Article III standing, "[t]he burden of showing that there is standing rests on the shoulders of the party asserting" that standing is proper in the case. *Smelt v. Cty. of Orange*, 447 F.3d 673, 682 (9th Cir. 2006). In addition to the constitutional requirements for standing under Article III, the Supreme Court has identified several prudential standing principles "to which 'the federal judiciary has also adhered.'" *Id.* (citing *Valley Forge*, 454 U.S. at 474). The Court has stated that to satisfy these additional requirements, the plaintiff "must assert his own legal rights and

interests, and cannot rest his claim to relief on the legal rights or interests of third parties[,]" the plaintiff's complaint must "fall within the zone of interests to be protected or regulated by the statute or constitutional guarantee in question[,]" and federal courts cannot adjudicate "abstract questions of wide public significance" which are "most appropriately addressed in the representative branches." *Valley Forge*, 454 U.S. at 474-75 (citations omitted)

Standing is a jurisdictional issue, and federal courts must confront a challenge to standing before addressing the merits of the case. *See Steel Co v. Citizens for a Better Env't.*, 523 U.S. 83, 94-95 (1998) ("The requirement that jurisdiction be established as a threshold matter . . . is 'inflexible and without exception.'") (citation omitted). Challenges to standing "pertain to federal courts' subject matter jurisdiction, [and] they are properly raised in a Rule 12(b)(1) motion to dismiss." *Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1122 (9th Cir. 2010). When a litigant fails to establish Article III standing, "an Article III federal court therefore lacks subject matter jurisdiction over the suit [and i]n that event, the suit should be dismissed under Rule 12(b)(1)." *Cetacean Cmty. v. Bush*, 386 F.3d 1169, 1174 (9th Cir. 2004).

"Rule 12(b)(1) jurisdictional attacks can be either facial or factual." *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). "In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). However, "in a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." *Id.* When presented with a factual attack on Article III standing, the court "may look beyond the complaint to matters of public record without having to convert the motion into one for summary judgment." *White*, 227 F.3d at 1242. To survive a Rule 12(b)(1) challenge to standing, a plaintiff "need only show that the facts alleged, if proved, would confer standing upon him." *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1140 (9th Cir. 2003).

**D. Vistage's Motion to Dismiss Based On Article III Standing**

### i. Plaintiff Salu

Vistage challenges Salu's Article III standing to bring claims for fraud and under the UCL. Salu alleges in the Complaint he "has suffered damages in the form of substantial loss of business and profits to his company, in the estimated amount of $3 million." (ECF No. 1 at ¶ 85). The Court of Appeals has found that "[e]conomic injury is clearly a sufficient basis for standing." *San Diego Cty. Gun Rights Comm.*, 98 F.3d at 1130. However, the Complaint states that Direct List is solely owned by JAL Equity, and it is undisputed by the parties that Salu has never been an employee of Direct List. (ECF Nos. 1 at ¶ 12, 54-3 at 2-3).

In order to satisfy the Article III injury requirement, Salu must demonstrate that he suffered an injury personal and separate from any alleged injury sustained by Direct List. "[A]t an irreducible minimum," the Article III injury requirement is satisfied with a showing that the plaintiff "personally has suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant[.]" *Valley Forge*, 454 U.S. at 472 (quoting *Gladstone, Realtors v. Village of Bellwood*, 441 U.S. 91, 99 (1979)).

Salu bears the burden to demonstrate he has satisfied Article III standing, and he fails to do so on both the fraud and UCL claims.[1] *See Thompson v. McCombe*, 99 F.3d 352, 353 (9th Cir. 1996) (holding the "party invoking the federal court's jurisdiction has the burden of proving the actual existence of subject matter jurisdiction."). Vistage prevails on its facial attack on Salu's Article III standing because "the allegations contained in [the] complaint are insufficient on their face to invoke federal jurisdiction." *Safe Air*, 373 F.3d at 1039. Salu alleges that he "suffered damages in the form of substantial loss of business and profits to his company[.]" (ECF No. 1 at ¶ 85). Absent this statement, the Complaint does not contain allegations that Direct List is Salu's company. Salu has failed to allege an injury sufficient to satisfy Article III standing on the face of the complaint.

---

[1] While the UCL contains its own standing requirement, plaintiffs in a UCL suit must still satisfy the constitutional standing requirements of Article III. *Kwikset Corp. v. Superior Court*, 246 P.3d 877, 885 (Cal. 2011).

Further, Vistage prevails on its factual attack on Salu's Article III standing. After a review of "any evidence, such as affidavits and testimony," the Court finds that Salu has not suffered any injury separate from Direct List. *McCarthy v. United States*, 850 F.2d 558, 560 (9th Cir. 1988). Based on a review of the parties' filings and the Record,[2] the Court determines that Salu has not demonstrated that he has suffered a cognizable injury sufficient to satisfy the requirements of Article III. A review of the Record demonstrates that Salu has failed to demonstrate that Direct List is "*his* company[,]" and that any of the damages alleged in the Complaint are distinct from damages alleged to have been suffered by Direct List. (ECF No. 1 at ¶ 85) (emphasis added).

In addition, the Court reviewed the Damages Report submitted by Plaintiffs. (ECF No. 47-5 at 47-75). Even if the Court assumes that the Report provides some evidence that Direct List suffered an injury, it does not establish that Salu himself suffered an injury. The general allegations in the Complaint relating to Salu's personal injuries are injuries suffered by Direct List, and not by Salu. Therefore, Salu lacks Article III standing to bring fraud and UCL claims against Vistage for injuries suffered by Direct List because Salu has failed to satisfy the injury requirement for Article III standing in federal court. *See Warren*, 328 F.3d at 1140, 1141-45 (granting Rule 12(b)(1) motion to dismiss for lack of standing because the plaintiff failed to demonstrate "that the facts alleged, if proved, would confer standing upon him."). The motion to dismiss the fraud and UCL claims by Salu against Vistage is granted.

### ii. Plaintiff Direct List

Direct List alleges that "[i]n reliance on these and many other repeated assurances of confidentiality, Mr. Salu shared confidential information with Mr. Kessler, his Vistage CEO Group Chair" Phil Kessler, and that "the Vistage Defendants, led by CEO

---

[2] This review does not transform Vistage's motion to dismiss on standing grounds against Salu into a Rule 56 motion for summary judgment. *See McCarthy*, 850 F.2d at 560; *see also Biotics Research Corp. v. Heckler*, 710 F.2d 1375, 1379 (9th Cir. 1983) (holding that a review of the record outside of the pleadings does not turn a motion to dismiss for lack of subject matter jurisdiction "into a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56.").

Group Chair Phil Kessler, used Mr. Salu's confidential information to form a competing business, AVS Leads." (ECF No. 1 ¶¶ 7-8). Direct List alleges that "Mr. Salu only shared this information because of the assurances from the Vistage Defendants that the information would be held in strictest confidence." *Id.* at ¶ 7. Direct List alleges that the confidential information shared by Salu was "regarding the design and operation of a business that Mr. Salu created called Direct List LLC." *Id.* The Court of Appeals has held that such but-for causation makes for a "strong[]" claim that the causation requirement has been satisfied at the motion to dismiss phase. *Maya v. Centex Corp.*, 658 F.3d 1060, 1070 (9th Cir. 2011). In addition, while "[t]his chain of causation has more than one link . . . it is not hypothetical or tenuous; nor do[es]" Vistage "challenge its plausibility." *Nat'l Audobon Soc'y, Inc. v. Davis*, 307 F.3d 835, 849 (9th Cir. 2002). Therefore, Direct List has satisfied its burden of demonstrating that it has suffered an injury in fact to achieve Article III standing.

Direct List alleges that a favorable judgment against Vistage would redress the harm it has suffered because "Defendants have . . . continue[d] to cause substantial and irreparable damage and injury to Plaintiffs." (ECF No. 1 at ¶ 102). Vistage contends that Direct List "does not allege that Vistage is engaged in any conduct that is causing either Plaintiff any harm" and that "enjoining Vistage from using the Confidential Information will not redress any potential injury Plaintiffs claim to have suffered." (ECF No. 47-1 at 26).

To demonstrate that it has satisfied Article III's redressability requirement for the purpose of a Rule 12(b)(1) motion, Direct List need only show "that the facts alleged, if proved, would confer standing upon [it]." *Warren*, 328 F.3d at 1140. This Court has ruled in a prior order that "[t]he allegations of the Complaint are adequate to infer that Vistage may be liable for the actions of Kessler under the theory of agency and ratification." (ECF No. 20 at 10). Plaintiffs allege that "[l]ed by Phil Kessler and others, AVS Leads recruited away all of Direct List's key employees, and poached its customers, using confidential information of Direct List[,]" and Vistage does not

contest that AVS continues to operate to this day. (ECF No. 1 at ¶ 8). Direct List has sufficiently alleged that the injury it has suffered may be redressed by a judgment in its favor. The Court finds that the prudential standing principles have been satisfied for Direct List's UCL claim against Vistage. *See Valley Forge*, 454 U.S. at 474-75 (discussing prudential standing principles). The Court finds that Direct List has met its burden to establish Article III standing to bring its UCL claim against Vistage.

**III. Motion for Summary Judgment on Direct List's UCL Claim Against Vistage**

    **A. Facts**

Salu joined Vistage in 2007 and was a dues paying member until mid-2015. (ECF No. 53-9 at 2; Salu Decl. at ¶ 3). After moving from North Carolina, Salu joined a Vistage group in San Diego, California and subsequently selected a group chaired by Defendant Phil Kessler. (ECF No. 47-1 at 10; Salu Dep. at 148:19-20). While Salu was a member of this Vistage group, he shared financial information regarding the company Direct List with the group, including Kessler. (ECF No. 53 at 6, Salu. Dep. at 61:24-62:11). Salu and Kessler would engage in regular one-on-one meetings on a monthly basis from May 2011 through early 2015. (Salu Dep. at 147:19-148:16).

In May 2015, Salu learned that employees at Direct List had quit and subsequently joined a new company called AVS Leads. (ECF No. 53-9 at 4; Salu Decl. at ¶ 10). In his declaration, Salu states that "[b]y September of 2015, Phil Kessler's company, AVS Leads, had recruited away all of my employees and virtually all of my customers." *Id.* at ¶ 13. Salu states that during this time, "Phil Kessler had not been terminated by Vistage or even disciplined." *Id.*

Pete Sciabarra, Vice President of Field Operations at Vistage, states that "Vistage has never done business with AVS, it has no ownership interest in AVS, it does not profit directly or indirectly from AVS, it has no relationship with AVS, and it does not compete against AVS." (ECF No. 47-3 at 2, Sciabarra Decl. at ¶ 2). Sciabarra states that "Vistage was not aware of any conduct alleged by the Plaintiffs pertaining to Phil Kessler prior to June of 2015[,]" and "Vistage's first notice of the

subject matter alleged in the lawsuit occurred on June 16, 2015, by which time the company AVS Leads was already formed and operating, and the Direct List workers had already left Direct List and accepted employment at AVS." *Id.* at ¶ 7. Sciabarra states that "Vistage does not possess, have custody or control of, or use any trade secrets, confidential or proprietary information of Direct List LLC[,] and that "Vistage has no interest in this information whatsoever." *Id.* at ¶ 3.

### B. Contentions of the Parties

Vistage contends "[t]he remedies available" for Direct List's UCL claim "are narrowly circumscribed by statute to injunctive relief and/or restitution[,]" and that it is entitled to summary judgment on the UCL claim because Direct List does "not allege any conduct of Vistage that must be enjoined, nor seek any Vistage profits to be disgorged[.]" (ECF No. 47-1 at 25). Vistage contends that Direct List seeks injunctive relief "consist[ing] of enjoining the further misuse of the Confidential Information, but [Direct List] never allege[s] that Vistage . . . uses or even possesses it." *Id.* at 8. Vistage contends that Direct List relies on a "previous and now-outdated version of the" UCL statute that permitted claims brought to prevent harm to the general public, and that the California Supreme Court and the Court of Appeals have since recognized that UCL claims cannot be brought to prevent harm to the general public. (ECF No. 54 at 8-9).

Direct List contends that the alleged fraud committed by Vistage "has already occurred . . . with respect to Salu, [but] it is not true with respect to all current and future members of Vistage." (ECF No. 53 at 4). Direct List contends that injunctive relief against Vistage is appropriate because Vistage "has no legitimate reason to continue promising confidentiality to the public and its members" because a Vistage employee stated that the company cannot guarantee confidentiality in a deposition in this matter. *Id.* at 18. Direct List contends that "Vistage continues to tout the confidentiality of its services to this very day," and therefore "Vistage should be enjoined from making these false promises, so that others do not fall victim to Vistage's

bait-and-switch as Salu did." *Id.* at 4-5.

### C. Standard of Review

Summary judgment is proper when the movant shows that in the record, "including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials[,]" there "is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a), (c). An issue of fact is "genuine . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). An issue of fact is material if it "might affect the outcome of the suit under the governing law." *Id.* at 248. "The burden of establishing the nonexistence of a 'genuine issue' is on the party moving for summary judgment." *Celotex Corp. v. Cattrett*, 477 U.S. 317, 330 (1986). A material fact is one that is relevant to an element of a claim or defense, determined by the substantive law governing the claim or defense. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986).

Once the moving party meets its initial burden, the non-moving party must go beyond the pleadings and, by its own evidence, "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 250. In order to make this showing, the non-moving party must "identify with reasonable particularity the evidence that precludes summary judgment." *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996) (citation omitted). When considering a motion for summary judgment, courts "must assume the nonmoving party's version of the facts to be correct." *Liston v. Cty. of Riverside*, 120 F.3d 965, 977 (9th Cir. 1997) (citation omitted). If the moving party meets the initial burden, the nonmoving party cannot defeat summary judgment merely by demonstrating "that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586; *see also Anderson*, 477 U.S. at 252 ("The mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient.").

**D. Analysis**

The purpose of the UCL "is to protect both consumers and competitors by promoting fair competition in commercial markets for goods and services." *Kasky v. Nike, Inc.*, 45 P.3d 243, 249 (Cal. 2002). "In service of that purpose, the Legislature framed the UCL's substantive provisions in broad, sweeping language[.]" *Kwikset Corp. v. Superior Court*, 246 P.3d 877, 883 (Cal. 2011). "California's statutory unfair competition laws broadly prohibit unlawful, unfair, and fraudulent business acts." *Sybersound Records, Inc. v. UAV Corp.*, 517 F.3d 1137, 1151 (9th Cir. 2008). However, "[w]hile the scope of conduct covered by the UCL is broad, the remedies are limited." *Theme Promotions v. News America Mktg. FSI*, 546 F.3d 991, 1008 (9th Cir. 2008).

**i. Standing Under the UCL**

Two requirements are necessary to satisfy standing under the UCL: "a party must now (1) establish a loss or deprivation of money or property sufficient to qualify as injury in fact, i.e., economic injury, and (2) show that th[e] economic injury was the result of, i.e., caused by, the unfair business practice or false advertising that is the gravamen of the claim." *Kwikset*, 246 P.3d at 885.

The text and history of Proposition 64 suggests that the term "injury in fact" was included because of an "inten[tion] to incorporate the established federal meaning" of "standing under [A]rticle III" of the Constitution. *Id.* In 2004, Proposition 64 limited the 'injury in fact' requirement of the UCL to include only economic or monetary injuries; "[t]he plain import of this is that a plaintiff now must demonstrate some form of economic injury." *Id.*; *see also Animal Legal Defense Fund v. Mendes*, 72 Cal. Rptr. 3d 553, 560 (Cal. Ct. App. 2008) (finding that the UCL "discloses a clear requirement that injury must be economic, at least in part, for a plaintiff to have standing under

Business and Professions Code section 17204.").[3]

*Kwikset* found that inquiries for standing and for damages under the UCL "are wholly distinct" because requiring UCL standing to be "dependent on eligibility for" relief "would turn the remedial scheme of the UCL on its head." 246 P.3d at 894-95. Therefore, in order to satisfy standing under the UCL, "a plaintiff need not allege that he or she was entitled to restitutionary relief, but need only allege that he or she suffered an injury in fact, caused by the defendant." *Law Offices of Mathew Higbee v. Exp. Assistance Servs.*, 153 Cal. Rptr. 3d. 865, 875 (Cal. Ct. App. 2013).

The second factor for standing under the UCL "requires that a plaintiff's economic injury come 'as a result of' the unfair competition . . . [t]he phrase 'as a result of' in its plain and ordinary sense means 'caused by' and requires a showing of a causal connection or reliance on the alleged misrepresentation." *Kwikset*, 246 P.3d at 887 (citation omitted). In order to satisfy the causal requirement, "a plaintiff must demonstrate some causal nexus between the unlawful or deceptive act and damages incurred by the plaintiff[.]" *Rahman v. Mott's LLP*, No. CV 13-3482 SI, 2014 WL 5282106, at *5 (N.D. Cal. Oct. 15, 2014).

Direct List alleges "substantial and irreparable damage and injury" resulting from the allegedly unfair conduct under the UCL statute. (ECF No. 1 at ¶¶ 101, 102). Plaintiffs submitted an Expert Report, and it is undisputed that this Report was prepared to address "the damages Plaintiffs suffered in this dispute" – including damages allegedly suffered by Direct List. (ECF No. 54-3 at 6). The parties do not dispute that this Report "represents all of the damages [the expert] concludes that all of

---

[3] Prior to 2004, "any person could assert a[n unfair competition] claim on behalf of the general public regardless of whether they suffered an actual injury." *Lozano v. AT&T Wireless Services, Inc.*, 504 F.3d 718, 731 (9th Cir. 2007). In 2004, California voters approved Proposition 64 which eliminated standing based on a claim brought on behalf of the general public. *Kwikset*, 246 P.3d at 884. "The intent of this change was to confine standing to those actually injured by a defendant's business practices and to curtail the prior practice of filing suits on behalf of 'clients who have not used the defendant's product or service . . . or had any other business dealing with the defendant . . .'" *Id.* at 884 (quoting *Californians for Disability Rights v. Mervyn's LLC*, 138 P.3d 207, 209 (Cal. 2006)).

the Plaintiffs have suffered." *Id.* at 7. Vistage contends in its response to Plaintiffs' Assertion of Genuinely Disputed Facts that the expert "calculate[d] damages as the diminution in value of Direct List." *Id.* at 10-11.

The Report determined that the damages in this case total "$5,300,000 rounded." (Damages Report at 1, ECF No. 47-5 at 50). The Report determined that lost sales based on AVS Leads' "direct competition using the allegedly misappropriated Direct List confidential information" resulted in lost profits in 2014 and 2015. (Damages Report at 10, ECF No. 47-5 at 59). The Report states that its "underlying numbers are reliable" because of a "parallelism" resulting from a finding that "AVS Lead's [sic] revenue of $500 thousand [is] approximately the same as Direct List lost sales of $545 thousand (2014 v. 2015)." (Damages Report at 7, ECF No. 47-5 at 56).

Direct List has come forward with some evidence that it suffered economic injury in this matter. The UCL economic injury requirement is satisfied with a showing of "sales, revenue, market share, and asset value." *Allergan, Inc. v. Athena Cosmetics, Inc.*, 640 F.3d 1377, 1382 (Fed. Cir. 2011) (quotation marks omitted). The Court does not rule on the admissibility of the Damages Report. For the purpose of establishing standing at this stage of the proceedings, the Court accepts the Report as some evidence of economic injury sufficient to demonstrate standing under the UCL.

In Salu's declaration submitted by Plaintiffs, Salu states that "[b]y September of 2015, Phil Kessler's company, AVS Leads, had recruited away all of" Direct Lists employees. (ECF No. 53-9 at 6, Salu Decl. at ¶ 13). Salu states that at this time, "Phil Kessler had not been terminated by Vistage or even disciplined." *Id.* This Court has ruled in a prior order that "The allegations of the Complaint are adequate to infer that Vistage may be liable for the actions of Kessler under the theory of agency and ratification." (ECF No. 20 at 9-10). Direct List has come forward with some evidence that the economic injury it suffered in this matter was caused by Vistage, as Kessler was employed by Vistage at the time that Direct List employees left to work at AVS Leads and Direct List began to suffer economic injury. Direct List has come forth with some

1 evidence of UCL causation sufficient to demonstrate standing under the UCL.
2 Therefore, the Court finds that Direct List has standing under the UCL statute to bring
3 its claim against Vistage.

### ii. Remedies Under the UCL

"A UCL action is equitable in nature; damages cannot be recovered." *Korea Supply Co. v. Lockheed Martin Corp.*, 63 P.3d 937, 943 (Cal. 2003). Under the UCL, "[p]revailing plaintiffs are generally limited to injunctive relief and restitution." *Cal-Tech Comms., Inc. v. Los Angeles Cellular Tel. Co.*, 973 P.2d 527, 539 (Cal. 1999). The statute only provides for relief that is

> necessary to prevent the use or employment by any person of any practice which constitutes unfair competition, as defined in this chapter, or as may be necessary to restore to any person in interest any money or property, real or personal, which may have been acquired by means of such unfair competition.

Cal. Bus. & Prof. Code § 17203; *see also Clark v. Superior Court*, 235 P.3d 171, 174 (Cal. 2010) (holding that "[i]n a private unfair competition law action, the remedies are generally limited to injunctive relief and restitution" and that "damages, including punitive damages and increased or enhanced damages" are "[n]ot recoverable") (citation omitted). The UCL provides only for "limited remedies[.]" *Cal-Tech Comms.*, 973 P.2d at 539. Under section 17203, a "court cannot . . . award whatever form of monetary relief it believes might deter unfair practices." *Korea Supply Co.*, 63 P.3d at 946. When considering whether to grant equitable relief under the UCL, "the right to seek injunctive relief under section 17203 is not dependent on the right to seek restitution; the two are wholly independent remedies." *Clayworth v. Pfizer, Inc.*, 233 P.3d 1066, 1088 (Cal. 2010). However, the Legislature did not " intend[] to authorize a court to order a defendant to disgorge all profits to a plaintiff who does not have an ownership interest in those profits." *Korea Supply*, 63 P.3d at 946.

In the Complaint, Direct List seeks an order that Vistage disgorge its profits earned from the confidential information, and that Defendants be "enjoined" from "continu[ing] to carry out [] unlawful conduct[.]" (ECF No. 1 at ¶¶ 102, 104). Direct

List admits that any injunction issued by this Court would not be able to provide relief to Salu or Direct List, but instead contends that relief is necessary such that Vistage does not "continue promising confidentiality to the public[.]" (ECF No. 53 at 18).

Proposition 64 eliminated the right for a private citizen to sue under the UCL to prevent harm to the general public. *See Lozano*, 504 F.3d at 731 (finding that Proposition 64 "eliminated private attorney general standing for UCL claims.") Plaintiffs' sole claim for injunctive relief is based upon preventing future harm to the public, which Proposition 64 specifically eliminated. Direct List does not come forward with facts demonstrating that Vistage currently possesses any of Direct List's confidential information, nor does Direct List demonstrate any ongoing conduct by Vistage that can be cured by injunctive relief – other than general harm suffered by the public and other current Vistage members. (ECF No. 53 at 4). The Court finds that Direct List has failed to come forward with facts to support that it would be entitled to injunctive relief under the UCL.

Additionally, Direct List has failed to come forward with facts to demonstrate that an order for restitution or disgorgement of profits from Vistage will remedy its harm. Direct List has not set forth specific facts to contest the declaration of Sciabarra, who states that Vistage does not possess, nor have any interest in, any confidential information regarding Direct List's business practices. Further, Sciabarra states that "Vistage does not compete with Direct List LLC in any manner" and that "Vistage and Direct List operate entirely different businesses." (ECF No. 47-3 at 2, Sciabarra Decl. at ¶ 3-4). *See Saldate v. Wilshire Credit Corp.*, 686 F. Supp. 2d 1051, 1067 (E.D. Cal. 2010) (dismissing UCL claim because "[t]he complaint lacks allegations of ongoing wrongful business conduct or a pattern of such conduct.").

Direct List does not come forward with facts to demonstrate that Direct List has "an ownership interest in [AVS Leads'] profits" such that awarding restitution for Direct List against Vistage would be "permitted under the UCL." *Korea Supply*, 63 P.3d at 947-48. Under the limited remedies provided by the UCL, "an individual may

recover profits unfairly obtained to the extent that these profits represent monies given to the defendant or benefits in which the plaintiff has an ownership interest." *Id.* at 947. Direct List has not come forward with any facts to demonstrate that any profits allegedly gained by AVS Leads were "given to" Vistage. *Id.* In awarding restitution under the UCL, the Court is permitted only to "restore the status quo by returning to the plaintiff funds in which he or she has an ownership interest[,]" and there are no facts to show that Direct List is entitled to recovery. *Id.* As Direct List has failed to demonstrate a genuine dispute of material fact as to whether it is entitled to either of the two remedies "allowed under the UCL[,]" the Court grants Vistage's motion for summary judgment on the UCL claim brought by Direct List. *Theme Promotions*, 546 F.3d at 1009.

## IV. Conclusion

IT IS HEREBY ORDERED that Vistage's Motion for Summary Judgment, or in the Alternative Dismissal, of Plaintiffs' Fraud and Cal. Bus. & Prof. Code § 17200 Claims (ECF No. 47) is **GRANTED**.

DATED: November 3, 2016

*William Q. Hayes*
**WILLIAM Q. HAYES**
United States District Judge